BECKLER v. BERRY.

4-4987

Opinion delivered March 28, 1938.

M. F. Elms, for appellant.

Ingram & Moher, for appellee.

GRIFFIN SMITH, C. J. On April 6, 1934, judgment for $850 was rendered in favor of Standard Grocer Company,

and against J. W. Beckler. Execution was issued in May, 1935, and Beckler filed his schedule claiming statutory exemptions. On hearing an order was entered sustaining exemptions and subsequently the execution was returned *nulla bona*. Thereafter the grocer company caused another execution to issue, under which the sheriff levied upon certain certificates of Standard Grocer Company stock standing in the name of J. W. Beckler. The stock was advertised for sale, whereupon Peter Beckler, appellant herein, sought to restrain the sale, alleging that he was the owner of such stock and that it had been his property for a long period prior to the time judgment was rendered against his brother, J. W. Beckler. Appellant applied to the county judge for a temporary order enjoining the sale. The order was granted on condition that satisfactory bond be executed in the sum of $1,500. This bond was not given and the sale was consummated, with C. C. Berry as purchaser. The sheriff answered appellant's suit and Berry intervened. Berry denied that the stock belonged to Peter Beckler and alleged that it had never been pledged; or, if in fact pledged, the transaction occurred but a short time before judgment was rendered against J. W. Beckler in favor of the grocer company, and was therefore a fraud practiced upon creditors. Peter Beckler did not testify.

J. W. Beckler testified that from 1921 to 1928 he borrowed money of his brother and secured the loans by mortgage. Specifically, he insisted that on February 18, 1929, $2,600 was borrowed and that Standard Grocer Company certificate for thirty shares of stock was pledged. The total claimed indebtedness was $7,600, interest payments having been made from time to time. Witness said that in 1933 he paid $2,000 on the principal due his brother, using money realized from sale of a lot on which appellant held a mortgage. On March 1, 1934, witness executed a mortgage for appellant's benefit. At that time the debt balance was $4,570, and the certificate for thirty shares of stock was supplemented by an additional pledge of fifty shares. There was a verbal agreement that the stock should be security for the debt. This agreement was made March 4, 1934. There is this state-

ment by the witness: "I received letter [from Standard Grocer Company] to bring in stock for reissue, but did not do so because it was held by Peoples National Bank until March, 1934. . . . I do not care to tell what other property I own. . . . Have some other real estate, but do not care to tell where it is. . . . I attended a meeting of the stockholders of Standard Grocer Company when the capital stock was reduced from $100,000 to $50,000, and was a director."

The sheriff testified that when he levied on the two stock certificates they were in the possession of Standard Grocer Company.

Appellee Berry was secretary of Standard Grocer Company. He testified that in 1932 the capital stock was reduced from $106,000 to $100,000, and that J. W. Beckler surrendered his original certificates and new ones were issued to him. Before action was taken reducing the stock from $100,000 to $50,000 J. W. Beckler was notified by letter but did not appear to demand his certificates and they remained in the office of the grocer company. The certificates sold by the sheriff had never been transferred on the company's books and had at all times stood in the name of J. W. Beckler.

From this testimony it would seem that J. W. Beckler, after receiving certificates at the time the capital was reduced from $106,000 to $100,000, did not turn them in for reissue. Therefore, the certificates held by the grocer company were those issued pursuant to the second reduction.

It is shown by the testimony of W. B. Pfeiffer, president of the Peoples National Bank of Stuttgart, that the bank made a loan of $2,000 to J. W. Beckler on December 31, 1930. This loan was secured by a pledge of fifty shares of Standard Grocer Company stock and $2,600 in notes. The loan was paid February 25, 1932, and the collateral surrendered at the same time.

The banker's testimony that the grocer company stock was surrendered in 1932 is in conflict with that of Beckler, who said: "I received letter [from Standard Grocer Company] to bring in stock for reissue, but did

not do so because it was held by Peoples National Bank until March, 1934.''

From the foregoing evidence, and from other testimony, the chancellor found that the alleged pledging of the stock was not *bona fide.* The decree is not contrary to the weight of evidence, and it is, therefore, affirmed.